1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   DUSTY W. LEWIS,                        CASE NO. 1:13-cv-1147-MJS (PC)

12            Plaintiff,                    **ORDER DISMISSING COMPLAINT WITH
                                            LEAVE TO AMEND**
13      v.
                                            **(ECF No. 8)**
14   MARGARET MIMS, et al.,
                                            **THIRTY (30) DAY DEADLINE**
15            Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil

18   rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff has consented to magistrate

19   judge jurisdiction. No other parties have appeared in the action.

20        The Court screened Plaintiff's complaint (ECF No. 1) and dismissed it for failure to

21   state a claim, but gave leave to amend. (ECF No. 7.) Plaintiff has since filed an amended

22   complaint (ECF No. 8), which is before the Court for screening.

23   I.   **SCREENING REQUIREMENT**

24        The Court is required to screen complaints brought by prisoners seeking relief

25   against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

26   § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has

27   raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which

28

1    relief may be granted, or that seek monetary relief from a defendant who is immune from

2    such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion

3    thereof, that may have been paid, the court shall dismiss the case at any time if the court

4    determines that . . . the action or appeal . . . fails to state a claim upon which relief may

5    be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

6    **II.     PLEADING STANDARD**

7        Section 1983 "provides a cause of action for the deprivation of any rights,

8    privileges, or immunities secured by the Constitution and laws of the United States."

9    Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).

10   Section 1983 is not itself a source of substantive rights, but merely provides a method for

11   vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94

12   (1989).

13       To state a claim under § 1983, a plaintiff must allege two essential elements: (1)

14   that a right secured by the Constitution or laws of the United States was violated and (2)

15   that the alleged violation was committed by a person acting under the color of state law.

16   See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243,

17   1245 (9th Cir. 1987).

18       A complaint must contain "a short and plain statement of the claim showing that

19   the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations

20   are not required, but "[t]hreadbare recitals of the elements of a cause of action,

21   supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S.

22   662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

23   Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief

24   that is plausible on its face." Id. Facial plausibility demands more than the mere

25   possibility that a defendant committed misconduct and, while factual allegations are

26   accepted as true, legal conclusions are not. Id. at 677-78.

27

28

### III.    PLAINTIFF'S ALLEGATIONS

Plaintiff is incarcerated at Wasco State Prison, but complains of acts that occurred during his pretrial detention at the Fresno County Jail. Plaintiff names as defendants: 1) Margaret Mims, Fresno County Sheriff, 2) Dr. Than Aw, 3) Dr. Ramos, 4) Nurse O. Dionisio, and 5) Dr. Badu.

Plaintiff's allegations relate to Defendants' treatment of his right knee injury, and may be summarized essentially as follows:

Plaintiff has a history of surgically repaired ankles and, on September 20, 2012, sustained an injury which was later diagnosed as a broken right ankle and torn right MCL and patella.

On September 21, 2012, Plaintiff saw Defendant Aw, who gave Plaintiff a splint and ordered him to walk back to his housing unit. Plaintiff was not given crutches or referred to the hospital.

On September 27, 2012, a sergeant observed swelling and bruising at Plaintiff's ankle injury and ordered Plaintiff transported to CRMC Hospital. There, x-rays caused Dr. John Orona to diagnose a fractured right talus and a right knee soft tissue injury. Dr. Orona ordered follow-up for Plaintiff's injuries at CRMC's orthopedic clinic, crutches, and pain medication.

On October 9, 2012, Dr. Aw referred Plaintiff for CRMC orthopedic clinic follow-up for his right ankle injury, but not for his right knee injury.

On October 18, 2012, P.A. Arturo Avila saw Plaintiff at the CRMC orthopedic clinic, diagnosed a right knee dislocation, and ordered an MRI of the knee. He also ordered Plaintiff to return the following day, ordered crutches and/or a walker, and ordered "no weight bearing."

On November 1, 2012, Plaintiff saw orthopedist Dr. Daniel Baxter, who ordered an MRI of Plaintiff's right knee, crutches, and no weight bearing.

On November 15, 2012, Defendant Aw discontinued Plaintiff's crutches, forcing Plaintiff to walk and bear weight on his right knee.

On November 25, 2012, Plaintiff was seen by Defendant Ramos, who refused to refer Plaintiff to an orthopedic surgeon unless Plaintiff could pay for knee surgery. He also refused to order a patella stabilizer.

On November 27, 2012, Defendant Aw ordered an MRI of Plaintiff's right knee.

On December 4, 2012, Plaintiff again saw Defendant Aw. Plaintiff had not yet undergone MRI of the right knee. Defendant Aw again discontinued Plaintiff's crutches, forcing Plaintiff to bear weight on his right knee.

Plaintiff underwent an MRI on January 17, 2013, and thereafter was diagnosed with a torn right MCL and patella. He was placed back on crutches.

On March 8, 2013, Defendant Aw again discontinued Plaintiff's crutches, medically cleared him, and had him removed from medical housing and placed in an isolation cell.

On May 6, 2013, Defendant Aw referred Plaintiff to an orthopedic surgeon for treatment of his right knee.

On May 23, 2013, Defendant Aw "re-ordered" Plaintiff's crutches.

On September 20, 2013, Plaintiff had his last visit with Defendant Aw. Plaintiff still had not seen an orthopedic surgeon.

On December 4, 2013, Plaintiff saw Defendant Badu, who refused to provide pain medication, transfer Plaintiff to CRMC to be evaluated by an orthopedic surgeon, or provide him with the patella stabilizer that had been ordered on September 20, 2013.

On December 22, 2013, Plaintiff saw Defendant Ramos, who refused to refer Plaintiff to an orthopedic surgeon or provide pain medication.  Ramos advised Plaintiff he did not need medical care for his right knee injury and, in any event, would receive medical care in prison. Defendant Ramos also refused to provide the patella stabilizer that had been ordered on September 20, 2013.

1    As of the January 3, 2014 filing of Plaintiff's complaint, Plaintiff continued to suffer

2  pain and had not been seen by an orthopedic surgeon.

3    Defendant Dionisio denied five medical grievances that Plaintiff filed in relation to

4  the lack of treatment for his right knee injury.

5    Defendant Mims failed to supervise Plaintiff's medical providers, and failed to

6  investigate and discipline the providers following Plaintiff's grievances.

7    Plaintiff's request for relief is partially illegible, but appears to seek monetary

8  damages, knee surgery, and to be seen by an orthopedic surgeon at CRMC.

9  **IV.    ANALYSIS**

10    **A.    Fourteenth Amendment Medical Care Claim**

11    Because a pretrial detainee has not been convicted of a crime, but  only been

12  arrested, his  right to receive adequate medical care derives from the Due Process

13  Clause of the Fourteenth Amendment rather than from the Eighth Amendment's

14  protection against cruel and unusual punishment. Gibson v. Cnty. of Washoe, Nev., 290

15  F.3d 1175, 1187 (9th Cir. 2002). Nonetheless, the Due Process Clause imposes, at a

16  minimum, the same duty imposed by the Eighth Amendment: "persons in custody have

17  the established right to not have officials remain deliberately indifferent to their serious

18  medical needs." Id. at 1187 (citation, internal quotation marks, and brackets omitted).

19  Accordingly, courts evaluating a pretrial detainee's medical care claim routinely rely on

20  decisions applying Eighth Amendment standards for claims of inadequate medical care

21  to convicted prisoners. See, e.g., id.

22    An Eighth Amendment claim of medical indifference requires (1) a serious

23  medical need, and (2) a deliberately indifferent response by defendant. Jett v. Penner,

24  439 F.3d 1091, 1096 (9th Cir. 2006). The deliberate indifference standard is met by

25  showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical

26  need and (b) harm caused by the indifference. Id.

27

28

1    "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d
2    1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be
3    aware of the facts from which the inference could be drawn that a substantial risk of
4    serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting
5    Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been
6    aware of the risk, but was not, then the official has not violated the Eighth Amendment,
7    no matter how severe the risk.'" Id. (brackets omitted) (quoting Gibson, 290 F.3d at
8    1188). Mere indifference, negligence, or medical malpractice is not sufficient to support
9    the claim. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v.
10   Gamble, 429 U.S. 87, 105-06 (1976)).

11       Plaintiff's allegation that he suffered a torn MCL and patella that caused pain,
12   required him to use crutches, and required that he avoid weight bearing is sufficient to
13   allege a serious medical need. Jett, 439 F.3d at 1096 (a "serious medical need" may be
14   shown by demonstrating that "failure to treat a prisoner's condition could result in further
15   significant injury or the 'unnecessary and wanton infliction of pain'"); McGuckin v. Smith,
16   974 F.2d 1050, 1059-60 (9th Cir. 1992) ("The existence of an injury that a reasonable
17   doctor or patient would find important and worthy of comment or treatment; the presence
18   of a medical condition that significantly affects an individual's daily activities; or the
19   existence of chronic and substantial pain are examples of indications that a prisoner has
20   a 'serious' need for medical treatment.").

21       However, the complaint does not sufficiently allege that Defendants knowingly
22   denied and delayed medically necessary care or knowingly provided unacceptable
23   medical care. See Toguchi, 391 F.3d at 1058–60 (9th Cir. 2004). Plaintiff appears to
24   complain that Defendant Aw did not immediately send him to the hospital, delayed
25   ordering an MRI, discontinued crutches, and delayed referral to an orthopedic surgeon.
26   Plaintiff also appears to complain that Defendants Ramos and Badu refused to refer him
27   to an orthopedic surgeon or provide him with a patella stabilizer. These allegations
28

1    reflect Plaintiff's disagreement with the treatment provided. They do not suggest

2    Defendants acted maliciously or with a conscious disregard of a serious risk Plaintiff

3    might be harmed by their action or inaction. Rather it appears Defendants provided care

4    consistent with their medical judgment and that Plaintiff, and perhaps even other medical

5    personnel, simply disagreed with the choices Defendants made for his care and

6    treatment.

7         Plaintiff's disagreement with the treatment decisions and his belief that he should

8    have received surgery, without more, is not a basis for an inadequate medical care claim

9    unless the treatment chosen is medically unacceptable and in conscious disregard of an

10   excessive risk to the prisoner's health. See Franklin v. Oregon, 662 F.2d 1337, 1344 (9th

11   Cir. 1981); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Nothing suggests

12   Defendants intentionally provided medically unacceptable care. Defendants' medical

13   care is not unacceptable simply because they changed treatment and did not provide

14   surgical treatment. So long as his treatment was adequate, that Plaintiff might have

15   preferred different treatment does not give rise to a Fourteenth Amendment violation.

16   Evan v. Manos, 336 F. Supp. 2d 255, 261 (W.D.N.Y. 2004); see also Veloz v. New York,

17   339 F. Supp. 2d 505, 521 (S.D.N.Y. 2004) ("To establish deliberate indifference, plaintiff

18   must demonstrate that the defendants actually wished him harm, or at least, were totally

19   unconcerned with his welfare." (brackets omitted) (citing Hathaway v. Coughlin, 37 F.3d

20   63, 69 (2d Cir. 1994))).

21        Likewise the facts alleged do not support an inference that Defendants' treatment

22   caused Plaintiff further injury. See McGuckin, 974 F.2d at 1060 (any alleged delay in

23   receiving medical treatment must have led to further harm in order for the prisoner to

24   make a claim of deliberate indifference to serious medical needs) (citing Shapely v.

25   Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

26        Even if Defendants failed to properly treat Plaintiff in accordance with the medical

27   standard of care, he alleges nothing more than medical negligence which is not a federal

28

1   civil rights violation. See Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)

2   (mere indifference, negligence, or medical malpractice will not support this cause of

3   action) (citing Estelle, 429 U.S. at 105–06 (1976)).

4       Plaintiff will be given **one more opportunity** to amend his complaint. If Plaintiff

5   chooses to amend, he must allege facts demonstrating that Defendants knowingly

6   denied, delayed, or interfered with treatment of his serious medical needs, or knowingly

7   provided medically unacceptable care, in conscious disregard of an excessive risk to

8   Plaintiff's health and resulting in harm to Plaintiff.

9         **B.**    **Fourteenth Amendment Medical Care Claim – Denial of Grievances**

10      Plaintiff may wish to allege that Defendant Dionisio also was deliberately

11  indifferent to his medical needs, in violation of the Fourteenth Amendment. However,

12  Plaintiff has failed to allege sufficient facts to state a claim against Defendant Dionisio.

13  Plaintiff alleges that he has filed nine grievances "seeking adequate medical care and to

14  be seen by an orthopedic surgeon," five of which were denied by Defendant Dionisio,

15  and four of which were pending at the time Plaintiff filed his complaint. However, without

16  additional detail, the Court cannot determine that, in denying Plaintiff's grievances,

17  Defendant Dionisio knew of and disregarded a substantial risk of harm to Plaintiff.

18      Plaintiff's initial complaint did not contain any allegations regarding Defendant

19  Dionisio or the denial of Plaintiff's grievances. (ECF No. 1.) Plaintiff was advised in the

20  Court's prior screening order that leave to amend was not given for the purpose of

21  adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Nevertheless,

22  because of its close connection to the core claim here, the Court will give Plaintiff **one,**

23  **and only one, opportunity** to amend this claim.  If he elects to do so, he must, as

24  explained above, allege facts to show that Defendant Dionisio knowingly denied,

25  delayed, or interfered with treatment of Plaintiff's serious medical needs in conscious

26  disregard of an excessive risk to Plaintiff's health and resulting in harm to Plaintiff.

27

28

1

### C.    Supervisory Liability

Plaintiff wishes to bring claims against Defendant Mims for her failure to properly supervise the other Defendants and to investigate Plaintiff's grievances.

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff has not alleged sufficient facts to state a claim against Defendant Mims. Although Plaintiff alleges that he filed numerous grievances that would have put Defendant Mims on notice of the other Defendants' alleged misconduct, he does not allege any facts to indicate that she actually was aware of his grievances or the alleged deficiencies in Plaintiff's medical care.

The prior screening order advised Plaintiff of these deficiencies and the requirements for correcting them. Plaintiff's ongoing failure to correct these deficiencies is reasonably construed as reflecting his inability to do so. Leave to amend the claims against Defendant Mims would be futile and therefore will be denied.

### D.    Injunctive Relief

Plaintiff's complaint appears to seek an order directing that he be provided knee surgery and further treatment by an orthopedic surgeon at CRMC Hospital.

1    Plaintiff's requests fall within the category of requests for injunctive relief.

2    Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never

3    awarded as of right." Winter v. Natural Res. Def. Council, 555 U.S. 7, 22 (2008). "A

4    plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the

5    merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

6    the balance of equities tips in his favor, and that an injunction is in the public interest."

7    Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009)

8    (quoting Winter, 555 U.S. at 20). The Court does not have jurisdiction to order injunctive

9    relief which would require directing parties not before the Court to take action. Zepeda v.

10   United States Immigration & Naturalization Serv., 753 F.2d 719, 727 (9th Cir. 1985) ("A

11   federal court may issue an injunction if it has personal jurisdiction over the parties and

12   subject matter jurisdiction over the claim; it may not attempt to determine the rights of

13   persons not before the court.").

14   Plaintiff's request for injunctive relief is moot because he is no longer incarcerated

15   at the Fresno County Jail, and nothing indicates he will be transferred back to Fresno

16   County Jail. See Preiser v. Newkirk, 422 U.S. 395, 402–03 (1975); Johnson v. Moore,

17   948 F.2d 517, 519 (9th Cir. 1991); see also Andrews v. Cervantes, 493 F.3d 1047, 1053

18   n. 5 (9th Cir. 2007).

19   Plaintiff has not alleged facts suggesting the need for or entitlement to injunctive

20   relief. Leave to amend would be futile and will not be granted.

21   **V.    CONCLUSION AND ORDER**

22   Plaintiff's first amended complaint does not state a claim for relief. The Court will

23   grant Plaintiff one last opportunity to file an amended complaint consistent with the

24   foregoing. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff opts to

25   amend, he must demonstrate that the alleged acts resulted in a deprivation of his

26   constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual

27   matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly,

28

1   550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named Defendant

2   personally participated in a deprivation of his rights. Jones v. Williams, 297 F.3d 930,

3   934 (9th Cir. 2002).

4       Plaintiff should note that although he has been given the opportunity to amend, it

5   is not for the purposes of adding new claims. George, 507 F.3d at 607. Plaintiff should

6   carefully read this Screening Order and focus his efforts on curing the deficiencies set

7   forth above.

8       Finally, Plaintiff is advised that Local Rule 220 requires that an amended

9   complaint be complete in itself without reference to any prior pleading. As a general rule,

10  an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d

11  55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no

12  longer serves any function in the case. Therefore, in an amended complaint, as in an

13  original complaint, each claim and the involvement of each defendant must be

14  sufficiently alleged. The amended complaint should be clearly and boldly titled "Second

15  Amended Complaint," refer to the appropriate case number, and be an original signed

16  under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P.

17  8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a

18  right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations

19  omitted).

20      Accordingly, it is HEREBY ORDERED that:

21      1.      The Clerk's Office shall send Plaintiff (1) a blank civil rights complaint form

22  and (2) a copy of his first amended complaint, filed January 3, 2014;

23      2.      Plaintiff's first amended complaint (ECF No. 8) is DISMISSED for failure to

24  state a claim upon which relief may be granted;

25      3.      Plaintiff shall file an amended complaint within thirty (30) days; and

26

27

28

4.     If Plaintiff fails to file an amended complaint in compliance with this order, the Court will dismiss this action, with prejudice, for failure to state a claim and failure to comply with a court order.

IT IS SO ORDERED.

Dated:   <u>August 19, 2014</u>        <u>/s/ *Michael J. Seng*</u>

UNITED STATES MAGISTRATE JUDGE